UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NATHAN DOBNEY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>OFFICER ANTHONEY KLUNDER,<br>CLAY COUNTY,<br>CITY OF VERMILLION, and<br>MICHAEL SMITH,<br><br>                    Defendants. | 4:17-CV-04050-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on plaintiff Nathan Dobney's *pro se* complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act.  See Docket No. 1.  Defendants have moved the court for the entry of summary judgment in their favor.  See Docket No. 15. This matter has been referred to this magistrate judge pursuant to the January 19, 2018, order of the Honorable Karen E. Schreier, United States District Judge, and 28 U.S.C. § 636(b)(1)(A) and (B).  The following is this court's recommended disposition of defendants' motion.

## FACTS

### A.    The Complaint and Answer

Mr. Dobney filed a complaint asserting claims of wrongful arrest; violation of his rights under the Fourth and Fourteenth Amendments; violation of the Rehabilitation Act, Section 504; violation of Title II of the ADA;

discrimination, and false accusation.  <u>See</u> Docket No. 1 at p. 1.  He alleges Clay County Deputy Sheriff Michael Smith pulled Mr. Dobney's vehicle over on October 19, 2016.  During the traffic stop, Mr. Dobney had told Deputy Smith he suffered from attention deficit disorder (ADD) and showed the officer his prescription pill bottle for the medication Adderall which is prescribed for his ADD.  <u>Id.</u> at p. 3.  Despite providing this information, and despite the fact that his preliminary breath test (PBT) was negative for the presence of alcohol, Deputy Smith arrested Mr. Dobney for driving under the influence (DUI).  <u>Id.</u> Mr. Dobney asserts there was no probable cause for his arrest.  <u>Id.</u>  When Mr. Dobney was brought to the jail for booking, he alleged he was forced to submit to a urine test, which was negative for all illicit substances other than Adderall.  <u>Id.</u>  Mr. Dobney alleges the police officers were not properly trained and failed to make basic accommodations for Mr. Dobney's disability.  <u>Id.</u>

Mr. Dobney requests compensatory damages of $10,000 and punitive damages of $2 million.  <u>Id.</u> at p. 4.  He also requests injunctive relief in the form of retraining for the officers of the Vermillion Police Department and the Clay County Sheriff's Office to make them aware of the ADA, the Rehabilitation Act, and civil rights.  <u>Id.</u> at p. 3.

Defendants filed a joint answer constituting what can only be characterized as a general denial.  <u>See</u> Docket No. 12.  They also assert the defense of qualified immunity.  <u>Id.</u> at p. 1.

**B.    Defendants' Statement of Undisputed Material Facts**

Defendants filed a statement of undisputed material facts in support of their motion for summary judgment.  See Docket No. 17.  Although Mr. Dobney filed a response to defendants' motion, he did not contradict any of the materials facts asserted by defendants.  Therefore the following facts are taken exclusively from defendants' statement of material facts.

On or about 2:30 a.m. on October 19, 2016, plaintiff was driving eastbound on South Dakota Highway 50, west of Vermillion, South Dakota. Dobney deposition, p. 10.  Plaintiff was observed by Deputy Michael Smith to be driving at a speed much slower than the posted limit.  Deputy Smith also observed plaintiff's vehicle swerve back and forth within his lane for several minutes, often touching the center line or shoulder marker.  Smith Aff. ¶ 4. Deputy Smith initiated a traffic stop after observation of plaintiff's driving. Dobney deposition, p. 13.

During the stop, Deputy Smith conducted the standard field sobriety tests including a breath test, a walk and turn, and a one-leg stand test.  Smith Aff. ¶¶ 5-9.  During the walk and turn test, plaintiff lost balance at the outset of the test.  Plaintiff also swayed back and forth while standing still at the start of the test.  Plaintiff had to be reminded multiple times to count his steps out loud.  Deputy Smith concluded that plaintiff displayed three clues on the test, while two are indicative of potential impairment.  Smith Aff. ¶ 6.  Deputy Smith conducted a PBT and plaintiff blew .000.  Smith Aff. ¶ 9.  After the

conclusion of the field sobriety tests, Deputy Smith placed plaintiff under arrest for driving under the influence.  Dobney deposition, p. 14.

During the stop, Deputy Smith became aware of plaintiff's prescription for Adderall, which plaintiff takes for attention deficit disorder.  After the arrest and while plaintiff was in the patrol car, plaintiff removed the prescription bottle from his pocket for Deputy Smith's examination.  Smith Aff. ¶¶ 10-11. After the arrest, defendant Klunder arrived on the scene.  He assisted with the search of the vehicle and remained with plaintiff's vehicle until a relative could pick it up.  Dobney deposition, p. 15.

After Deputy Smith transported plaintiff back to the station, Officer Klunder performed a "drug recognition evaluation."  After this evaluation, Officer Klunder concluded that plaintiff was likely impaired due to the results of the field tests and the tests performed in the station.  Klunder Aff. ¶ 4.

## C.    Other Facts

In addition to their formal statement of undisputed material facts, defendants submitted a transcript of Mr. Dobney's deposition (Docket No. 19-1) and a DVD of the video and audio recording of the traffic stop from Deputy Smith's dashcam recorder (Docket No. 20-1).  Mr. Dobney submitted, attached to his complaint, a copy of an affidavit executed by Deputy Smith in support of a search warrant for Mr. Dobney's blood or other bodily fluids.  See Docket No. 1-1.  The following additional facts are taken from those exhibits.

Mr. Dobney was diagnosed with ADD in approximately the second grade; he is in his mid-30s now.  See Docket No. 19-1 at p. 6.  He takes the

prescription drug Adderall for this condition. <u>Id.</u> Mr. Dobney testified under oath that he told both Deputy Smith and Officer Klunder that he suffered from ADD. <u>Id.</u> at p. 10 (pp. 36-37 of the deposition).

Deputy Smith initially followed Mr. Dobney's vehicle for approximately 4 ½ minutes before pulling him over on October 19, 2016. <u>See</u> Docket No. 20-1 at 0:00-4:30. The speed of the vehicles is not apparent in the video. Prior to the traffic stop, the recording showed Mr. Dobney's vehicle veering to the right-hand fog line on the highway once or twice and touching the lane divider between the two same-direction lanes of travel once. <u>Id.</u>

At the location of the stop on South Dakota Highway 50, there are four lanes of traffic, two going east and two going west, divided by a median. <u>See</u> Docket No. 19-1 at p. 4 (p. 10 of the deposition). Mr. Dobney was traveling east toward the town of Vermillion and was not yet in town when he was stopped. <u>Id.</u> Mr. Dobney works in the town of Yankton, located to the west of Vermillion, but lives in Vermillion. <u>Id.</u> He had just finished working his shift at 2:00 a.m. at his job in Yankton and was returning home at the time of the stop. <u>Id.</u> at p. 3 (p. 7 of the deposition); p. 4 (pp. 11-13 of the deposition).

Prior to asking Mr. Dobney to engage in the standard field sobriety tests, Deputy Smith asked Mr. Dobney whether he had:

--"any issues with your eyes at all." <u>See</u> Docket No. 20-1 at 8:44-9:00.

--"any medical issues at all." <u>Id.</u>

--"any medical conditions that prohibit you from walking or from standing for long periods of time." <u>Id.</u>

Mr. Dobney answered "no" to all these questions.  Id.

Deputy Smith also asked Mr. Dobney whether he took any medications. Id. at 8:54.  Mr. Dobney did not volunteer any information.  Id.  Deputy Smith then asked "Ok, how about that one that was in your pocket?" referring to Mr. Dobney's Adderall.  Id.  Mr. Dobney then recalled the Adderall and told Deputy Smith he took it for ADD.  Id.  Deputy Smith then asked whether Mr. Dobney took any other medications, to which Mr. Dobney said no.  Id. at 8:57.

After Deputy Smith arrested Mr. Dobney, he submitted an affidavit to a state court judge in support of a request for a search warrant for Mr. Dobney's blood or other bodily fluids.  See Docket No. 1-1.  The state court judge issued the search warrant.  The results of this search warrant are that no illegal substances and no alcohol was found in Mr. Dobney's system—the only drug that was indicated was the Adderall.

Although neither party explicitly so states, the court infers that the state initially charged Mr. Dobney with driving under the influence and later dismissed the charges.  See Defendants' Summary Judgment Brief, Docket No. 16 at p. 4 ("[r]egardless of the effects of the breath test or the eventual dismissal of charges, . . .").  In fact, Mr. Dobney testified under oath in his deposition that the DUI charge was reduced to a charge of crossing the center line, a charge to which Mr. Dobney pleaded guilty.  See Docket No. 19-1 at p. 5 (p. 17 of the deposition).

Mr. Dobney asserts he has been stopped numerous times by law enforcement officers with the Vermillion Police Department or the Clay County Sheriff's Office for "anything and everything," but he had never before been cited. <u>See</u> Docket No. 19-1 at pp. 8-9 (pp. 29-31 of the deposition). Prior to the incident at issue in this lawsuit, he had never had any contact with Deputy Smith or Officer Klunder. <u>Id.</u> Mr. Dobney has had one prior conviction 10 years ago for a misdemeanor DUI. <u>Id.</u> at p. 5 (p. 14 of the deposition). Mr. Dobney has made written complaints to the Vermillion Police Department and the Clay County Sheriff's Office, but this is the first case in which he has filed a lawsuit. <u>Id.</u> at pp. 8-9.

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. <u>See</u> <u>Matsushita Elec. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>Helton v. Southland Racing Corp.</u>, 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Fed. Practice & Procedure, § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented:  "The inquiry performed is the threshold

inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. Though *pro se* litigants like Mr. Dobney are entitled to a liberal construction of their pleadings, FED. R. CIV. P. 56 remains equally applicable to them. Quam v. Minnehaha Co. Jail, 821 F.2d 522, 522 (8th Cir. 1987).

The district court is not required to "plumb the record in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and [the Eight Circuit does] not approve summary dismissal of such *pro se* claims without regard for these special problems." Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980). "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985).

**B.    Section 1983 Claims**

**1.    Individual Capacity Claims**

**a.    *Prima Facie* Case and Qualified Immunity**

In order to show a *prima facie* case under 42 U.S.C. § 1983, Mr. Dobney must show (1) defendants acted under color or state law and (2) " 'the alleged wrongful conduct deprived him of a constitutionally protected federal right.' "

Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (quoting Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009)).

Qualified immunity protects government officials from liability and from having to defend themselves in a civil suit if the conduct of the officials "does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit, not just a defense to liability at trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Therefore, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 536 (1991).

To determine whether an official may partake of qualified immunity, two factors must be determined: (1) whether the facts that plaintiff has shown make out a violation of a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the official's acts. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court finds that one of the two elements is not met, the court need not decide the other element, and the court may address the elements in any order it wishes "in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). Defendants are entitled to qualified immunity if the answer to either of the Saucier prongs is "no."

The question of whether a constitutional right was clearly established may not be formulated at a "high level of generality." Mullenix v. Luna, 577 U.S. ___, 136 S. Ct. 305, 308 (2015). Rather, the Court requires that the

10

inquiry be based on the specific context of the case, not a broad general proposition.  Id.  The Court has made clear there must be a case nearly factually squarely on point decided by the Supreme Court before a constitutional right can be considered "clearly established." Id. at 308-09.  For example, a plaintiff's right to be free from excessive force is not the appropriate inquiry.  Id.  Instead, the court must ask whether the right to be free from lethal force was clearly established in the context of a fleeing disturbed felon in the immediate area of persons to whom a risk of harm is posed by the felon's flight.  Id. at 309 (discussing Tennessee v. Garner, 471 U.S. 1 (1985)).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Stanton v. Sims, 571 U.S. 3, 5 (2013) (quoting Ashcroft v. al-Kidd, 563 U.S. 731 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))).  " 'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " Stanton, 571 U.S. at 5.  " 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting Hunter, 502 U.S. at 229).

The Supreme Court has stated that "if the defendant does plead the [qualified] immunity defense, the district court should resolve that threshold question before permitting discovery." Crawford-El v. Britton, 523 U.S. 574,

11

598 (1998) (citing <u>Harlow</u>, 457 U.S. at 818).  Only if the plaintiff's claims

survive a dispositive motion on the issue of qualified immunity will the plaintiff

"be entitled to some discovery."  <u>Id.</u>  Even then, the Court has pointed out that

FED. R. CIV. P. 26 "vests the trial judge with broad discretion to tailor discovery

narrowly and to dictate the sequence of discovery."  <u>Id.</u>  Such discretion

includes the ability to establish limits on the number of depositions and

interrogatories, to limit the length of depositions, to limit the number of

requests to admit, to bar discovery on certain subjects, and to limit the time,

place, and manner of discovery as well as its timing and sequence.  <u>Id.</u>

### b.    Deputy Smith

Deputy Smith asserts he is entitled to qualified immunity for conducting

the traffic stop and arresting Mr. Dobney.  In support of his § 1983 claim,

Mr. Dobney cites the Fourth and Fourteenth Amendments.  <u>See</u> Docket No. 1

at 1.  He does not indicate what provisions in the amendments he is invoking.

<u>Id.</u>  He does stated he was subject to "wrongful arrest," "discrimination," and

"false accusation."

The court begins with the traffic stop.  If a police officer observes a traffic

violation, even a minor one, that provides probable cause to conduct a traffic

stop.  <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996); <u>United States v.</u>

<u>Sallis</u>, 507 F.3d 646, 649 (8th Cir. 2007).  Weaving within one's own lane of

traffic constitutes a traffic violation sufficient to provide probable cause for a

traffic stop.  <u>United States v. Rehkop</u>, 96 F.3d 301, 305 (8th Cir. 1996).

Here, the video shows Mr. Dobney weaving slightly over the course of 4 ½ minutes. See Docket No. 20-1 at 0 to 4:30. His wheels touched the dividing line between the eastbound lanes and also touched the fog line on the shoulder. Id. This provided a legal basis for the stop. Rehkop, 96 F.3d at 305. Deputy Smith violated no constitutional rights by pulling Mr. Dobney over on these facts.

Once having stopped Mr. Dobney, Deputy Smith was entitled to investigate further if he had reasonable suspicion to believe Mr. Dobney was under the influence of alcohol or drugs. United States v. Gallardo, 495 F.3d 982, 987 (8th Cir. 2007). Defendants allege, and Mr. Dobney never disputes, that Mr. Dobney was driving notably slowly in addition to weaving within his lane of travel. These two things gave Deputy Smith reasonable suspicion to investigate further whether Mr. Dobney was driving under the influence of some substance. Adderall and ADD are not known to cause persons to weave while driving or to drive exceedingly slowly. Mr. Dobney never asserts this to be the case.

An arrest must be supported by probable cause. Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005); Ripson v. Alles, 21 F.3d 805, 807 (8th Cir. 1994). In the § 1983 context, an officer is entitled to qualified immunity for an arrest if probable cause *arguably* existed for the arrest. Anderson v. Creighton, 483 U.S. 635, 641 (1987); Ripson, 21 F.3d 808. Specifically, the test is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting]

13

officer [ ] possessed." <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (quoting

<u>Anderson</u>, 483 U.S. at 641). "Even law enforcement officers who 'reasonably

but mistakenly conclude that probable cause is present' are entitled to

immunity." <u>Id.</u>  <u>See also</u> <u>Hebron v. Touhy</u>, 18 F.3d 421, 423 (7th Cir. 1994)

(citing <u>Hunter</u> for the statement, "probable cause depends on information

known to the police at the time, not on how things turn out.")

    The court has no trouble concluding from all the information placed

before it that Deputy Smith was acting reasonably when he believed he had

probable cause to arrest Mr. Dobney.  In addition to the other facts discussed

above, the video of the traffic stop clearly shows Mr. Dobney was having

balance problems with the sobriety tests.  Although the PBT test was .000, that

would not eliminate the possibility that Mr. Dobney was under the influence of

some drug he had ingested.  The PBT reveals the presence of alcohol, but not

the presence of drugs in the bloodstream or urine.  All the circumstances

present combined to lead to a reasonable suspicion to believe Mr. Dobney was

under the influence of something.  Also, although this occurred after the fact of

the traffic stop, Mr. Dobney did plead guilty to a traffic violation, which itself

provided probable cause for an arrest.  <u>See</u> Docket No. 19-1 at p. 5 (p. 17 of the

deposition).  Mr. Dobney has not provided a case, an affidavit, or other law or

evidence to show that persons suffering from ADD cannot perform standard

field sobriety tests, with or without having ingested Adderall or other

medication designed to counteract the effects of ADD.  Thus, he has not shown

his arrest violated a clearly established constitutional right.

14

In Folkerts v. City of Waverly, Iowa, 707 F.3d 975, 979 (8th Cir. 2013), parents brought a claim under § 1983 for the arrest, interview, and prosecution of their son, who was so severely mentally retarded that his disability "would be obvious to anyone, including any police officer, who engaged in conversation with" him.  Charges were later dismissed.  Id.  The parents alleged police violated their son's substantive due process rights under the Fourteenth Amendment.  Id. at 980.  The Eighth Circuit held the officers were entitled to qualified immunity on the claim.  Id. at 982.

To establish a substantive due process violation, the parents had to establish that the police violated a fundamental right of their son and that defendants' conduct "shocks the conscience."  Id. at 980-81.  The court held the plaintiffs were required to show intent to harm or proof of deliberate indifference.  Id.  The intent-to-harm standard "applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation."  Id.  Deliberate indifference applies in circumstances where it is practical to deliberate.  Id.  The parents alleged police violated their son's rights by, *inter alia*, failing to accommodate his disability when interrogating him.  Id. at 981.  The court held the officer's interrogation did not shock the court's conscience:  the officer altered his questioning style in light of the son's mental disability, he more fully explained Miranda rights, he interviewed the son in a less intimidating setting, and he called the mother and invited her to the police station to be present during questioning.  Id.

15

Similar to the <u>Folkerts</u> case, here, Deputy Smith asked Mr. Dobney before embarking on field sobriety tests whether he had any problems with his eyes, any medical problems, or any medical problems that made it difficult for him to walk and stand. Mr. Dobney never told Deputy Smith that his ADD would interfere with the field sobriety tests. He did not tell Deputy Smith about his Adderall until prompted to do so by Deputy Smith. Mr. Dobney testified he has been diagnosed with ADD since the second grade and had a DUI conviction 10 years ago, which means he would almost certainly have had experience with going through sobriety tests with his ADD disability. Yet he never told Deputy Smith his ADD would prevent him from effectively performing field sobriety tests.

However, the focus is on Deputy Smith's conduct, not Mr. Dobney's inexplicable silence at the time. Deputy Smith's conduct does not shock the court's conscience. He was professional, courteous, and solicitous of any type of impairment that might hinder Mr. Dobney's ability to perform field sobriety tests. If Mr. Dobney's ADD did interfere with his performance on field sobriety tests, that was a secret Mr. Dobney kept to himself. There was nothing outwardly to alert Deputy Smith to this fact.

This case is not unlike <u>Bernardi v. Klein</u>, in which the court granted qualified immunity under similar facts. Mr. Bernardi was stopped on New Year's Eve for suspicion of driving under the influence after his car was observed swerving within his lane and driving lower than the posted speed limit. <u>Bernardi v. Klein</u>, 682 F. Supp. 2d 894, 897-900 (W.D. Wis. 2010).

16

Mr. Bernardi passed some field sobriety tests, failed others, and blew .000 on a PBT. Id. He was arrested for DUI and taken to the hospital for a blood draw, which showed no alcohol in his blood. Id. The criminal charges were dropped and he sued under § 1983. Id.

In his civil suit, Mr. Bernardi alleged there were several extenuating factors affecting his performance on the field sobriety tests that the officer failed to take into account, such as the cold, windy weather; his back, neck and leg problems; and his urgent need to use the bathroom. Id. at 905. The court noted the physical impairments were not readily apparent to the officer. Id. The court believed there was probable cause supporting Mr. Bernardi's arrest, but held that the qualified immunity defense required more: Mr. Bernardi had to show that the conclusion there was *not* probable cause under these facts was clearly established by case law at the time of his arrest. Id. at 906. The plaintiff did not show this, so the court granted immunity to the officer for false arrest. Id. See also Jolley v. Harvell, 254 Fed. Appx. 483, 487-89 (6th Cir. 2007) (officer entitled to qualified immunity for arrest where defendant failed some field sobriety tests, passed some, and sat at a stop sign at 2:23 a.m. for an inordinate amount of time).

The same conclusion applies with equal force in Mr. Dobney's case. Mr. Dobney has failed to show violation of a clearly established constitutional right: namely, that his arrest under these facts and circumstances was clearly unlawful. He has failed to show that. Deputy Smith was neither "plainly

17

incompetent" nor "knowingly violating the law." Therefore, Deputy Smith is entitled to qualified immunity.

Mr. Dobney alleges "discrimination" in his complaint, but never elaborates on this. The court must infer he is alleging Deputy Smith discriminated against him on the basis of his disability. However, the solicitude Deputy Smith showed Mr. Dobney prior to embarking on field sobriety tests puts an end to this claim. Deputy Smith deliberately sought to discover if Mr. Dobney had any disabilities that would interfere with the field sobriety tests. Mr. Dobney never spoke up and told Deputy Smith his ADD or his Adderall would interfere. Deputy Smith has qualified immunity on the discrimination charge.

### c.    Officer Klunder

Defendants assert that Mr. Dobney never identified a right which he believed Officer Klunder violated. The court cannot agree. It seems plain from a liberal reading of Mr. Dobney's pleadings that he believes Officer Klunder violated his Fourth Amendment right to be free from unreasonable searches and seizures when Officer Klunder (1) searched his car by the roadside and (2) compelled Mr. Dobney to give a urine sample at the police station. The court analyzes the facts in light of these claims.

The Fourth Amendment protects individuals from *unreasonable* searches and seizures by the government. <u>See</u> U.S. CONST. amend. IV. Here, clearly there were searches by Officer Klunder that implicated Mr. Dobney's Fourth Amendment rights. <u>Skinner v. Railway Labor Exec. Ass'n.</u>, 489 U.S. 602, 618-

19 (1989) (urine test is a search under the Fourth Amendment).  The question is whether the searches were reasonable.

Deputy Smith applied for and received a search warrant from a state court judge authorizing the taking of blood and urine from Mr. Dobney.  See Docket No. 1-1.  The facts asserted by Deputy Smith in support of the search warrant were as follows:  (1) Deputy Smith followed Mr. Dobney and observed the above-discussed lane violations; (2) Mr. Dobney was driving 45-52 miles per hour; (3) when Deputy Smith activated his lights Mr. Dobney did not pull over for several seconds; (4) Mr. Dobney was found with an empty pill bottle for amphetamines in his sweatshirt pocket; and (5) Mr. Dobney failed several of the balance and counting-out-loud field sobriety tests.  Id.  Deputy Smith asserted in his affidavit that all of these facts supported a conclusion that Mr. Dobney was impaired in his ability to drive.  Id.  Deputy Smith also informed the judge in his affidavit that a PBT resulted in a .000 reading.  Id.

A search warrant supported by probable cause is a reasonable search under the Fourth Amendment.  See U.S. Const. amend. IV.  "When the affidavit supporting the search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched, probable cause exists."  United States v. McIntyre, 646 F.3d 1107, 1115 (8th Cir. 2011) (quoting Unites States v. McArthur, 573 F.3d 608, 613 (8th Cir. 2009) (quoting United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002))).  See also Illinois v. Gates, 462 U.S. 213, 238 (1983).  "Probable cause requires only a showing of fair probability, not hard certainties."  United States v. Hudspeth,

525 F.3d 667, 676 (8th Cir. 2008).  Whether a search warrant is supported by probable cause is to be determined by considering the totality of the circumstances.  United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007).  The issuing judge's determination of the issue of probable cause should be paid "great deference."  United States v. O'Dell, 766 F.3d 870, 873 (8th Cir. 2014).

The above facts recited by Deputy Smith in his search warrant affidavit support the finding of probable cause.  Deputy Smith and Officer Klunder were entitled to rely in good faith on the search warrant in obtaining Mr. Dobney's urine.  United States v. Leon, 468 U.S. 897, 921, (1984).  Therefore, the court concludes there was no Fourth Amendment violation in connection with the search of Mr. Dobney's bodily fluids.  Both officers should be entitled to qualified immunity for the bodily fluids search.

Very little information is provided the court by either party concerning the search of Mr. Dobney's vehicle at the location of the traffic stop.  The usual rule under the Fourth Amendment is that a valid search warrant supported by probable cause must first be obtained before a search is conducted.  California v. Carney, 471 U.S. 386, 390 (1985).  There are, however, a number of exceptions to the warrant requirement, including the automobile exception.  Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam); United States v. Caves, 890 F.2d 87, 89 (8th Cir. 1989).  The Supreme Court has held that the "ready mobility" of automobiles creates an exigency that allows a warrantless search of an automobile where probable cause exists to believe that the vehicle contains contraband or evidence of criminal activity.  Labron, 518 U.S. at 940;

20

Caves, 890 F.2d at 89.  Aside from the mobility of cars, the automobile exception to the warrant requirement is also supported by the fact that citizens have a reduced expectation of privacy in an automobile because automobiles are subject to pervasive regulation.  Labron, 518 U.S. at 940 (citing Carney, 471 U.S. at 390-391); Caves, 890 F.2d at 89.

If probable cause exists in support of the automobile exception, the search may encompass the entire passenger compartment of the automobile, its trunk, and all containers, packages, and compartments located in the vehicle so long as there is probable cause to believe that the object of the search may be found there.  Caves, 890 F.2d at 90.  Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity."  United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (citing United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997), quoting Illinois v. Gates, 462 U.S. 213, 243-244 n.13 (1983)).  Probable cause to search under the automobile exception has been found where the driver is likely under the influence of alcohol or a controlled substance, or an open container or controlled substance is likely in the car as evidenced by its odor. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000); Caves, 890 F.2d at 90-91.

In addition, "a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody."  Rehkop, 96 F.3d at 305.

Here, there is not enough information to definitively conclude the automobile exception applies, but it appears the inventory search exception may apply.  Additionally, when a party files a properly supported summary judgment motion, as defendants have here, the burden is on the plaintiff to show disputed material issues of fact, or to show defendants are not entitled to judgment as a matter of law.  Here, Mr. Dobney does neither.  Accordingly, the court concludes defendants are entitled to qualified immunity on Mr. Dobney's claim that his Fourth Amendment rights were violated by the search of his car and by the search of his urine.

### 2.    Official Capacity Claims & Claims Against City & County

Official-capacity damages claims against state officials are treated as suits against the State itself.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). The Supreme Court has held that money damages are not available for § 1983 claims against state officials who are sued in their official capacities.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 71 (1989).  However, prospective injunctive relief *is* available against state *officials* (though not against the state itself), when sued in their official capacities.  <u>Will</u>, 491 U.S. at 71 at n.10.  This is because "official-capacity actions for prospective relief are not treated as actions against the State."  <u>Id.</u> (quoting <u>Graham</u>, 473 U.S. at 167 n.14 (citing <u>Ex Parte Young</u>, 209 U.S. 123, 159-60 (1908))).  Therefore, an official-capacity claim for prospective injunctive relief might be asserted, for example, against an *officer* of a state university, but could not be asserted against the university itself, which is the state itself (agencies of the state are

22

also the state for purposes of the Eleventh Amendment).  Monroe v. Arkansas State Univ., 495 F.3d 591, 594 (8th Cir. 2007).  Eleventh Amendment immunity protects the state itself from being sued.  Id.  When an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply.  Pearson v. Callahan, 555 U.S. 223, 242-43 (2009); Grantham v. Trickey, 21 F.3d 289, 295 (8th Cir. 1994).

"Because the real party in interest in an official capacity suit is the governmental entity and not the named official, 'the entity's "policy or custom" must have played a part in the violation of federal law.' " Hafer v. Melo, 502 U.S. 21, 25 (1991).  This is because local governmental entities can only be held liable under § 1983 to the extent the constitutional deprivation was made pursuant to official policy or custom of the city, county or other local governmental unit.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 689-90 (1978).  In official capacity suits, the only immunities available to an individually-named defendant are the immunities that the governmental entity possesses—i.e. usually Eleventh Amendment immunity.  Hafer, 502 U.S. at 25.  "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.' " Gladden v. Richbourg, 759 F.3d 960, 968 (8th Cir. 2014) (quoting Grayson v. Ross, 454 F.3d  802, 810 (8th Cir. 2006)).  An official policy or custom will not be inferred from the occurrence of a single incident.

Remington v. Hoopes, 611 Fed. Appx. 883, 886 (8th Cir. 2015) (citing

Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)).

Here, Mr. Dobney never alleges in either his complaint or his response to defendants' summary judgment motion that the City or the County had a policy or custom of arresting persons who were driving while taking prescription medications, nor that either governmental entity had a policy or custom of ignoring mental disabilities when making arrests. Mr. Dobney never asserts there was a city or county policy or custom of any kind.

Mr. Dobney does request injunctive relief in the form of training for the officers of the Vermillion Police Department and the Clay County Sheriff's Office. See Docket No. 1 at p.3. However, without a constitutional violation by the officers, there can be no municipal or county liability for failure to train. Sanders v. City of Minneapolis, MN, 474 F.3d 523, 527 (8th Cir. 2007). Therefore, the court recommends summary judgment be granted to defendants on Mr. Dobney's official capacity claims and claims against the city and county under § 1983. Mr. Dobney has failed to show any constitutional violation by the officers and has failed to demonstrate any unconstitutional policy or custom by the city or the county.

## C. Claims Under the ADA and the Rehabilitation Act

### 1. Claims Against Deputy Smith and Officer Klunder

The three titles of the ADA each address different aspects of disabled rights. Title I prohibits discrimination against disabled persons in employment. See 42 U.S.C. § 12112. Title III requires places of public

accommodation operated by private entities to provide facilities that allow full and equal enjoyment of goods, services and other benefits.  <u>See</u> 42 U.S.C. §§ 12181(6), (7), and 12182.

Title II of the ADA prohibits "public entities" from excluding "qualified" disabled persons from programs, activities, or services, or otherwise discriminating against disabled persons.  <u>See</u> 42 U.S.C. § 12132.[1]  A "qualified individual with a disability" "means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  <u>See</u> 42 U.S.C. § 12131(2).

A "public entity" is defined in part as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[2]  <u>See</u> 42 U.S.C. § 12131(1)(A) and (B). Although a state and any department of a state are "public entities" under Title II of the ADA (<u>see</u> <u>Klingler v. Director, Dept. of Revenue</u>, 433 F.3d 1078, 1080

---

[1] Section 12132 provides:  "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  <u>See</u> 42 U.S.C. § 12132.

[2] The other part of the definition of "public entity," not relevant here, is "the National Railroad Passenger Corporation, and any commuter authority."  <u>See</u> 42 U.S.C. § 12131(1)(C).

(8th Cir. 2006)), defendants in their individual capacities do not constitute "public entities" subject to suit under Title II of the ADA.

The Eighth Circuit held in an *en banc* decision that Congress' designation of liability for "public entities" under Title II of the ADA necessarily implied that there was no liability for individuals under that statute. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)). That decision has been followed by subsequent Eighth Circuit panels. See Dinkins v. Correctional Medical Servs., 743 F.3d 633, 634 (8th Cir. 2014) (*per curiam*) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (interpreting the Rehabilitation Act); Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010).

Other courts have come to the same conclusion as the Eighth Circuit. See e.g. Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (plaintiff cannot sue defendant in his individual capacity under 42 U.S.C. § 1983 for a Title II ADA violation); Lollar v. Baker, 196 F.3d 603, 610 (5th Cir. 1999) (same); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997) (same);  Wiesman v. Hill, 629 F. Supp. 2d 106, 111-12 (D. Mass. 2009) (holding that there is no liability for "persons" individually under Title II of the ADA, thus dismissing plaintiff's claim against employee of public housing authority); Damron v. North Dakota Com'r of Corrections, 299 F. Supp. 2d 970, 976 (D.N.D. 2004) (holding that prison officials could not be sued in their individual capacities under Title II of the ADA).

26

These holdings are consistent with the well-accepted principle that there is no individual liability under Title I of the ADA.  Alsbrook, 184 F.3d at 1005 n.8 (citing Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996); EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1280-82 (7th Cir. 1995)).

But, a plaintiff may assert a Title II claim for injunctive relief against a state employee in his or her official capacity.  The Eleventh Amendment does not bar the granting of injunctive relief.  Bradley v. Arkansas Dept. of Educ., 189 F.3d 745 (8th Cir. 1999), rev'd in part, Jim C. v. Arkansas Dept. of Educ., 235 F.3d 1079 (8th Cir. 2000); Missouri Child Care Assn. v. Cross, 294 F.3d 1034 (8th Cir. 2002).  Based on the above law, the court recommends granting summary judgment to Deputy Smith and Officer Klunder for any ADA/Rehabilitation Act claims against them in their individual capacities.  The court also recommends granting summary judgment to defendants for any claims against any defendant under the ADA/Rehabilitation Act for money damages.

**2.    Claims Against the City and County**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act similarly prohibits the denial of services to a disabled person on the basis of his disability.  Davis v. Francis Howell Sch. Dist., 104 F.3d 204, 206 (8th Cir.

1997) (citing 29 U.S.C. § 794(a)).  Violation of the ADA or the Rehabilitation Act is not grounds for suit under § 1983.  Id.  Instead, the remedies provided for under the ADA and the Rehabilitation Act are stand-alone remedies.  Id.  Both the ADA and the Rehabilitation Act are "similar in substance" except for the Rehabilitation Act's funding requirement.  Bahl v. County of Ramsey, 695 F.3d 778, 783 (8th Cir. 2012).  " '[C]ases interpreting either are applicable and interchangeable' for analytical purposes."  Id.

The first thing Mr. Dobney has to show under these claims is that he is a "qualified individual with a disability."  He never addresses this issue.  For purposes of the following analysis, the court assumes, but does not so hold, that an individual diagnosed with ADD while taking Adderall is a "qualified individual with a disability."  Cf. K.R.S. v. Bedford Community Sch. Dist., 109 F. Supp. 3d 1060, 1075 (S.D. Iowa 2015) (holding student with ADHD was a qualified person with a disability under § 504 of the Rehabilitation Act because defendants admitted to same).  Assuming that to be true, Mr. Dobney's ADA/Rehabilitation Act claim nevertheless fails.

In Sanders, the court held that the disabled person's own actions in attempting to run over police officers is what prompted the police's use of force, not a lack of training in dealing with individuals with disabilities.  Sanders, 474 F.3d at 527-28.  Accordingly, the court affirmed the district court's dismissal of plaintiff's ADA claim where the plaintiff suffered from bi-polar disorder and claimed the police lacked training in dealing with individuals with mental illness.  Id.

28

In Bahl, the court noted the question whether an arrest by a law enforcement officer is a covered service under Title II of the ADA or under the Rehabilitation Act has not been answered by the Eighth Circuit.  Bahl, 695 F.3d at 784.  The Bahl court declined to resolve the question, though the court did note that the "services, programs, or activities" language in Title II of the ADA has been construed by other courts and the Department of Justice to encompass "anything a public entity does."  Id. at 784, 787-88.  Instead, assuming the ADA applied, the court held that under the exigencies of a traffic stop, neither the ADA nor the Rehabilitation Act required the police officer to obtain a sign language interpreter in order to communicate with the arrestee. Id. at 784-85.

Distinguishing Bahl's case from an Eleventh Circuit case also involving a deaf motorist, the court held that whether an officer in a traffic stop must make reasonable modifications to his or her normal procedures is a fact-intensive inquiry and will vary with the circumstances depending on any exigent circumstances and safety concerns that are present.  Id. (discussing Bircoll v. Miami-Dade County, 480 F.3d 1072 (11th Cir. 2007)).  The Bahl court noted the Eleventh Circuit held in Bircoll that waiting for an oral interpreter before administering DUI field sobriety tests was not required by the ADA or the Rehabilitation Act.  Id. at 785.  The court summarized as follows:

> The duties of police officers during a traffic stop call for the
> exercise of significant judgment and discretion, and we will not
> second guess those judgments, where, as here, an officer is
> presented with exigent or unexpected circumstances.  In these
> circumstances, it would be unreasonable to require that certain

29

accommodations be made in light of overriding public safety concerns.

Id. Accordingly, the court affirmed the district court's grant of summary judgment to defendants on Bahl's ADA/Rehabilitation Act claim.

Here, there is no evidence in support of Mr. Dobney's claim that he was denied public services on account of his disability. There is no evidence he was discriminated against due to his disability.  Instead, the facts show Deputy Smith was very solicitous in inquiring about potential disabilities and Mr. Dobney never told Deputy Smith he had a disability that would have a bearing on his ability to perform field sobriety tests.  Mr. Dobney has not shown that ADD or Adderall in fact does have an impact on one's ability to perform field sobriety tests.  The court concludes defendants are entitled to summary judgment on Mr. Dobney's ADA/Rehabilitation Act claims.

## CONCLUSION

Based on the foregoing law, facts and analysis, this court respectfully recommends that defendants' motion for summary judgment [Docket No. 15] be granted in its entirety and that plaintiff Nathan Dobney's complaint be dismissed with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED March 28, 2018.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge